**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MEYERS DIVISION**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., AND SGO CORPORATION LIMITED, | ) CASE NO. ) ) **MOTION TO COMPEL COMPLIANCE** ) **WITH THIRD-PARTY SUBPOENA** ) |
| Petitioners, | ) ) |
| vs. | ) Related to Action Pending in the U.S. District ) Court of the District of Minnesota, ) *Smartmatic USA Corp., et al. v. Lindell, et al.*, |
| DENNIS MONTGOMERY, | ) 22-cv-00098-WMW-JFD ) |
| Respondent. | |

Smartmatic[1] moves this Court under Fed. R. Civ. P. 34 and 45 to compel

Dennis Montgomery to produce certain documents in his possession, custody, or

control and sit for a deposition.   The documents and testimony are relevant to

Smartmatic's claims in *Smartmatic USA Corp., et al. v. Lindell, et al.*, No. 22-cv-

00098-WMW-JFD (D. Minn.) (the "Minnesota Litigation").   In support of this

motion, Smartmatic states as follows:

### INTRODUCTION

Smartmatic commenced the Minnesota Litigation against Michael J. Lindell

and My Pillow, Inc. (collectively, "Defendants") on January 18, 2022.  Smartmatic

alleges that Defendants engaged in a widespread defamation campaign in which

---

[1] Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are collectively referred to as "Smartmatic."

they falsely claimed that Smartmatic, a voting machine manufacturer that operated exclusively in Los Angeles County, California during the 2020 U.S. Presidential election, and its competitor, U.S. Dominion, Inc., ("Dominion") rigged the election by flipping votes cast for Donald Trump to votes for Joe Biden. *See generally*, Exhibit A to Declaration of James R. Bedell ("Bedell Decl."), First Supplemental Complaint, at ¶¶ 75–141. Defendants touted information they received from Mr. Montgomery as key evidence proving their baseless claims against Smartmatic and Dominion. Most notably, Defendants championed Mr. Montgomery's claim that voting machine companies, the Obama administration, foreign actors, and others conspired to use a deep-state supercomputer called "The Hammer" and software called "Scorecard" to rig elections in the United States, including the 2020 election. Defendants published Mr. Montgomery's baseless claims in numerous defamatory documentaries, podcasts, symposiums, and other public appearances since the 2020 election.

Smartmatic served Mr. Montgomery with a subpoena (the "Subpoena") for documents related to Defendants' disinformation campaign and a subpoena for a deposition. Bedell Decl. Ex. B, Subpoena. Mr. Montgomery principally objected to the Subpoena on the grounds that: (i) his compliance is barred by the state secrets privilege; and (ii) he does not possess any relevant documents. Bedell Decl. Ex. C, Responses and Objections. His privilege claim is misplaced for at

2

least two reasons. *First*, the states secret privilege can be asserted only by the U.S. government, not a private individual. Not only has the U.S. government made no such assertion here, but it refused to assert the privilege after Mr. Montgomery presented it with the Subpoena. *Second*, even if some of the information sought were barred from production by the state secrets privilege, the privilege would not apply to communications or information exchanged between Mr. Montgomery and Mr. Lindell, or between Mr. Montgomery and any of the other non-governmental third parties relevant to the Subpoena. Accordingly, his failure to produce a single document in response to Smartmatic's Subpoena is untenable.

Mr. Montgomery's claim that he possesses no documents responsive to many of Smartmatic's requests similarly lacks any credibility. Smartmatic has received many documents in fact discovery demonstrating that Mr. Montgomery participated in relevant discussions since the 2020 election. Thus, he cannot reasonably claim that he does not possess a single document that is responsive to Smartmatic's subpoena.

At bottom, the Subpoena is narrowly tailored to the facts and claims at issue in the Minnesota Litigation, and Mr. Montgomery has failed to carry his burden to show that responsive documents are protected by a privilege or are irrelevant. Accordingly, Smartmatic respectfully requests that the Court order Mr. Montgomery to produce responsive documents and sit for a deposition.

## FACTUAL BACKGROUND

## I.   DEFENDANTS RELIED ON MR. MONTGOMERY IN THEIR DEFAMATION CAMPAIGN

Smartmatic initiated its lawsuit against Defendants after they engaged in a multi-pronged defamation campaign, broadcasting to the world that Smartmatic rigged the 2020 U.S. Election by using its technology to flip votes from Donald Trump to Joe Biden. Bedell Decl. Ex. A, First Supplemental Complaint, at ¶ 6. In Defendants' documentary, *Absolute Proof*, Mr. Lindell published statements by, among other unreliable sources, Mary Fanning, who purported to share evidence proving that foreign actors interfered in the 2020 U.S. Election. Bedell Decl. Ex. D, Transcript of *Absolute Proof*, at 75:15–83:22. Mary Fanning has publicly stated that a main source of her conspiracy theory is Dennis Montgomery. *See, e.g.*, Mary Fanning & Alan Jones, *Biden Using SCORECARD and THE HAMMER To Steal Another U.S. Presidential Election—Just Like Obama and Biden Did In 2012*, The American Report (October 31, 2020), *available at* https://theamericanreport.org/2020/10/31/biden-using-scorecard-and-the-hammer-to-steal-another-u-s-presidential-election-just-like-obama-and-biden-did-in-2012/ ("THE HAMMER includes an exploit application known as SCORECARD that is capable of hacking into elections and stealing the vote, according to CIA contractor-turned-whistleblower Dennis Montgomery . . . .").

Mr. Lindell has similarly confirmed that Mr. Montgomery was one of his principal sources for his defamatory statements and productions. Adam Roston & Peter Eisler, *The man behind Trump World's myth of rigged voting machines*, Reuters (Dec. 20, 2022), *available at* https://www.reuters.com/investigates/special-report/usa-election-montgomery/ ("'I own it,' Lindell said of Montgomery's data, touting it as irrefutable proof Trump was cheated."). In fact, he recently confirmed as much in a sworn declaration. Bedell Decl. Ex. Q, Declaration of Michael J. Lindell, at ¶¶ 2, 6 ("A significant basis, in part, for the statements made in the movies was the information I received about and from Montgomery").

## II.  MR. MONTGOMERY REFUSES TO COMPLY WITH THE SUBPOENA

On February 14, 2023, Smartmatic served Mr. Montgomery with a Subpoena. Bedell Decl. Ex. B, Subpoena. Smartmatic seeks, among other documents:

- Documents and communications regarding Smartmatic, Dominion, or the 2020 U.S. election;

- Communications with Mr. Lindell or My Pillow regarding Smartmatic, Dominion, the 2020 U.S. election, the Trump administration, or the Trump campaign; and

- Documents and communications related to Defendants' defamatory statements about Smartmatic, as well as the programs in which those statements appeared;

Bedell Decl. Ex. B, Subpoena, at p. 9–11.

Smartmatic thereafter met-and-conferred with Mr. Montgomery several times over the course of nearly three months to try to reach an agreement with Mr. Montgomery regarding his compliance with the Subpoena. For example, counsel for the parties connected on March 9, 2023, and scheduled a meet and confer for March 14, 2023. Bedell Decl. Ex. E, March 9, 2023 Email from C. Kachouroff to J. Bedell. Mr. Montgomery provided responses and objections to the Subpoena on March 27, 2023. Bedell Decl. Ex. C, Responses and Objections. For the vast majority of the document requests, Mr. Montgomery responded that either the state secrets privilege barred production or he did not possess any responsive documents. *Id.*

## III. MR. MONTGOMERY CLAIMS THE STATE SECRETS PRIVILEGE BARS PRODUCTION EVEN THOUGH THE GOVERNMENT REFUSED TO ASSERT THE PRIVILEGE.

Smartmatic sent a letter to Mr. Montgomery on April 13, 2023, outlining the deficiencies in Mr. Montgomery's responses. Bedell Decl. Ex. F, April 13, 2023 Ltr. from J. Bedell to C. Kachouroff. Smartmatic explained that Mr. Montgomery could not assert the state secrets privilege, and even if a valid privilege could have been asserted, Mr. Montgomery did not provide any details by which Smartmatic could evaluate his assertion. *Id.* Smartmatic further explained that even if the state secrets privilege covered *some* of the information sought, that privilege would not apply to communications between Mr. Montgomery and non-governmental parties

such as Mr. Lindell or Ms. Fanning. *Id.* Finally, Smartmatic argued that documents obtained in discovery in the Minnesota Litigation showed that Mr. Montgomery's responses claiming he possessed no responsive documents were not credible. *Id.* Smartmatic, therefore, requested another meet and confer with counsel. *Id.*

Counsel met and conferred again on April 24, 2023. During that call, Mr. Montgomery's counsel confirmed that he was in contact with an Assistant United States Attorney from the District of Minnesota regarding the Subpoena. Bedell Decl. ¶ 9. On April 27, 2023, counsel forwarded Smartmatic a letter received from the U.S. Attorney for the District of Minnesota. Bedell Decl. Ex. G, April 26, 2023 Ltr. from A. Luger to P. McSweeney & C. Kachouroff. In the letter, the government stated that its position on Smartmatic's Subpoena was the same as its position regarding a similar subpoena served by Dominion in *Montgomery v. eTreppid Technologies, LLC, et al.*, 3:06-cv-00056-MMD-CSD (D. Nev.). *Id.*

In *eTreppid*, a copyright and trade-secret-misappropriation dispute between Mr. Montgomery and an LLC of which he was a member, the parties litigated claims that had nothing to do with the Subpoena, the 2020 Election, or any claims of election fraud. *See Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1177 (D. Nev. 2008). Mr. Montgomery also brought claims in *eTreppid* against the U.S. Department of Defense related to copyright infringement and a

nondisclosure agreement.   Bedell Decl. Ex. H, May 15, 2023 Report and Recommendation in *eTreppid*, at 2.   In 2007, the court entered a protective order finding that some information that could be introduced in the case was subject to the state secrets privilege.   *Id.* at 3.   Specifically, the protective order barred the parties from disclosing any documents reflecting: "(1) 'the existence of any actual or proposed relationship' between the parties and any U.S. intelligence agency and (2) any 'actual or proposed intelligence agency interest in, application of or use of any technology, software or source code owned or claimed by the Parties.'" *Id.*

In 2022—more than 13 years after Mr. Montgomery's claims against the government in *eTreppid* were dismissed with prejudice—Mr. Lindell sought to intervene to obtain an order lifting the protective order in the case, arguing that he needed Mr. Montgomery's data to defend against a defamation action brought by Dominion.   *Id.* at 4.   Mr. Montgomery then filed his own motion in the case, arguing that the protective order barred him from complying with the subpoena because Lindell sought information protected by the state secrets privilege under the court's protective order in *eTreppid*.   *Id.* at 5.   For its part, the government argued that "the Protective Order in this litigation was entered over 15 years ago, pursuant to an assertion of the state secrets privilege over 16 years ago.   Just by simply looking at a calendar shows that the Order had nothing to do with the 2020 election or alleged fraud therein."   *Id.* at 13.   The *eTreppid* court then denied Mr.

Montgomery's motion.   Bedell Decl. Ex. H, May 15, 2023 Report and Recommendation in *eTreppid*, at 1.  The government took the same position when Montgomery provided it with Smartmatic's Subpoena..  Bedell Decl. Ex. G, April 26, 2023 Ltr. from A. Luger to P. McSweeney & C. Kachouroff.

Counsel for Smartmatic and Mr. Montgomery spoke three more times between April 28, 2023 and May 9, 2023.  Bedell Decl. ¶ 12.  Mr. Montgomery asserted that the vast majority of documents responsive to the Subpoena were covered by the state secrets privilege.  *Id.*  Smartmatic noted that Mr. Montgomery still had not produced any responsive documents, which was clearly improper because the privilege could not possibly apply to many categories of documents requested by Smartmatic.  *Id.*   On May 15, 2023, though, Mr. Montgomery stated that he refused to sit for a deposition or produce any documents without a court order requiring him to do so.  Bedell Decl. Ex. I, May 15, 2023 Ltr. from P. McSweeney to J. Bedell & A. Parker.

### STANDARD OF REVIEW

Rule 45 provides that a party seeking to enforce a subpoena may "move the court for the district where compliance is required for an order compelling production or inspection." *Abante Rooter & Plumbing, Inc. v. Poundteam Inc.*, No. 8:20-mc-110-T-30SPF, 2021 WL 2430768, at *1 (M.D. Fla. Jan. 21, 2021). Discovery sought under Rule 45 is subject to the same standards as other discovery

rules. *Nuvasive, Inc. v. Absolute Med., LLC*, No. 6:17-cv-2206-Orl-41GJK, 2018 WL 11343350, at *3 (M.D. Fla. Aug. 31, 2018).

## ARGUMENT

Smartmatic's motion to compel should be granted for three reasons. *First*, the information sought from Mr. Montgomery is relevant to the Minnesota Litigation, and compliance with the Subpoena will not impose an undue burden on Mr. Montgomery. *Second*, the state secrets privilege or other nondisclosure obligations do not apply to the information sought in the Subpoena. *Third*, Mr. Montgomery's claim that he does not possess documents responsive to some of Smartmatic's requests is not credible based on documents already produced in the Minnesota Litigation.

## I.   THE INFORMATION REQUESTED BY SMARTMATIC IS RELEVANT

The scope of discoverable information under Rule 45 is the same as under Rule 26. *Fit Tea LLC v. Alani Nutrition LLC*, No. 6:23-mc-1-WWB-LHP, 2023 WL 2351657, at *1 (M.D. Fla. Mar. 3, 2023). Thus, Smartmatic may obtain from Mr. Montgomery "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Furthermore, "[w]hen discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined

under Fed. R. Civ. P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gov't Emps. Ins. Co. v. Martineau*, No. 8:19-cv-1382-T-35SPF, 2020 WL 2128477, at *1 (M.D. Fla. May 5, 2020).

Discovery related to Mr. Montgomery is an important component of Smartmatic's claim that Defendants acted with "actual malice," *i.e.,* they published a statement about Smartmatic "with knowledge that it was false or with reckless disregard of whether it was false or not." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *see also Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (defaming with reckless disregard includes making a statement "with a high degree of awareness of . . . probably falsity, or . . . [while] entertain[ing] serious doubts as to the truth of [the defendant's] publication"). One of the hallmarks of actual malice is evidence that the defendant had "obvious reasons to doubt the veracity of [its] informant or the accuracy of the report." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

All of the documents and information concerning Mr. Montgomery that Smartmatic has requested are relevant to Defendants' actual malice. Indeed, since Defendants began defaming Smartmatic following the 2020 election, they have routinely touted Mr. Montgomery as one of their primary sources of election fraud information. Bedell Decl. Ex. Q, Declaration of Michael J. Lindell, at ¶¶ 2, 6 ("A

significant basis, in part, for the statements made in the movies was the information I received about and from Montgomery"). Indeed, Mr. Lindell stated the following to potential donors to his "Lindell Legal Offense Fund":

> Now, I have exciting news. Dennis Montgomery, the software engineer, and former government insider is the whistleblower on election fraud. Montgomery's information will be the final nail in the coffin for THE PROOF that electronic voting machines are stealing your voice! . . . This is so significant that it will vindicate me from all the lawfare that Dominion and Smartmatic have waged against us! They can't hide the facts from the American people anymore!

Bedell Decl. Ex. J, Sept. 7, 2022 Email from N. Dressen to T. Carter. Similarly, prior to Mr. Lindell's Cyber Symposium—a three-day event during which Defendants purported to show incontrovertible facts proving the 2020 U.S. election was rigged—a cybersecurity expert hired by Mr. Lindell also stated that Mr. Montgomery was the source of the data to be provided at the Symposium. Aaron Blake, *The spectacular implosion of Mike Lindell*, The Washington Post (Aug. 12, 2021), *available at* https://www.washingtonpost.com/politics/2021/08/12/ spectacular-implosion-mike-lindell/ ("[Josh Merritt] confirmed the source of the cyber-data as Dennis Montgomery."); *see also* Adam Roston & Peter Eisler, *The man behind Trump World's myth of rigged voting machines*, Reuters (Dec. 20, 2022), *available at* https://www.reuters.com/investigates/special-report/usa-election-montgomery/ ("'I own it,' Lindell said of Montgomery's data, touting it as irrefutable proof Trump was cheated.") ("[Lindell] did release some [of Mr.

Montgomery's] data, however, in August of 2021, when he invited teams of information-technology experts to scrutinize it at a 'cyber symposium.'").

Throughout Mr. Lindell's disinformation campaign, others have warned him that Mr. Montgomery and his election fraud conspiracy theories were not credible. Bedell Decl. Ex. K, Feb. 9, 2021 Email from J. Flynn to M. Lindell; *see also* Aaron Blake, *The spectacular implosion of Mike Lindell*, The Washington Post (Aug. 12, 2021), *available at* https://www.washingtonpost.com/politics/2021/08/12/ spectacular-implosion-mike-lindell/ (noting that in 2014, Mr. Montgomery's actions were considered "one of the most elaborate and dangerous hoaxes in U.S. history"). Nevertheless, Mr. Lindell has, time and time again, continued to rely on Mr. Montgomery as a source for his baseless election fraud claims and labeled anyone who doubted Mr. Montgomery and his conspiracy theories as "traitors" and "spies." Bedell Decl. Ex. L, July 25, 2021 Text Message from M. Lindell to K. Rasmussen ("[t]he people saying these things [about Mr. Montgomery] are the spy's [sic] and treasonist [sic]"). In fact, Mr. Lindell continued to publicly claim that Mr. Montgomery's information was valid more than a year after the Cyber Symposium and well after others had demonstrated that Mr. Montgomery had provided him inaccurate information:

> And one of them said, she said, "Mike, everywhere we go I wish you wouldn't talk about the Dennis Montgomery thing and that stuff, because it's just, it doesn't, it's not real,"

> whatever, and I got upset and I looked at her and I said, "it is
> real."

*Validating The Dennis Montgomery Data*, FrankSpeech, at 1:12–1:37 (Oct. 13,
2022), *available at* https://frankspeech.com/video/validating-dennis-montgomery-
data.

Based on Mr. Montgomery's role as a prominent source of baseless
information that Mr. Lindell published about Smartmatic, Smartmatic requested
several categories of documents and information from Mr. Montgomery, including
the following:

- Information related to voting technology companies and the 2020 U.S.
  election (Request Nos. 1–4, 9, 14–17);

- Information related to Mr. Montgomery's contacts with Defendants
  and their associates (Request Nos. 5–8, 10–13, 16–17); and

- Information related to Mr. Montgomery's association with
  Defendants' defamation campaign (Request Nos. 10–13, 16–17).

Bedell Decl. Ex. B, Subpoena. Those documents and the others that Smartmatic
seek are all probative of Mr. Lindell's actual malice because they will show, for
example: the information that Mr. Montgomery provided to Mr. Lindell, including
information related to "Hammer and Scorecard"; the extent to which Mr. Lindell
relied on Mr. Montgomery as a source even after he knew that Mr. Montgomery
and his conspiracy theories were not credible; and Mr. Montgomery's participation
in publications in which Mr. Lindell defamed Smartmatic. *See, e.g., Mahnke v.
Nw. Publ'ns, Inc.*, 160 N.W.2d 1, 9 (Minn. 1968) (affirming jury verdict for

plaintiff where defendant relied on source who "was in no position to have the true facts in his possession."). These documents and information are clearly relevant on their face to Smartmatic's claims and Mr. Montgomery cannot meet his burden to show that they are irrelevant or that the burden of production would "outweigh the ordinary presumption in favor of broad disclosure." *Martineau*, 2020 WL 2128477, at *1.

## II.   MR. MONTGOMERY IMPROPERLY ASSERTED THE STATE SECRETS PRIVILEGE.

As the party resisting discovery requests, Mr. Montgomery bears the burden to prove a valid privilege bars his production of relevant documents. *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005) ("The party asserting the privilege has the burden of proving the existence of the privilege."). Mr. Montgomery has refused to cooperate with the Subpoena principally based on his claim that the state secrets privilege (or other governmental nondisclosure obligation) bars production of documents or testimony. But his argument is misplaced for at least two reasons. *First*, only the government can claim the state secrets privilege. *Second*, even if Mr. Montgomery properly invoked the privilege (he did not), Smartmatic requested communications between Mr. Montgomery and third parties, such as MyPillow employees, which could not possibly be shielded by the privilege.

### A.   *Mr. Montgomery does not have standing to assert the state secrets privilege.*

The state secrets privilege "permits the Government to prevent disclosure of information when that disclosure would harm national security interests." *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022). This is typically invoked in cases involving military secrets, such as the existence of espionage or the location (or denial of that location) of a storage facility for nuclear weapons. *Tenet v. Doe*, 544 U.S. 1, 9–10 (2005). It is well settled that only the government may invoke the state secrets privilege. *See, e.g., Doe v. CIA*, 576 F.3d 95, 104 (2d Cir. 2009); *Raytheon SI Gov. Sols., Inc. v. Carroll*, No. 6:11-cv-1615-Orl-19KRS, 2011 WL 13299638, at *4 (M.D. Fla. Nov. 21, 2011). And the privilege may be claimed only by "the head of the department with control over the matter in question after personal consideration by that officer." *Doe*, 576 F.3d at 104.

Mr. Montgomery does not have standing to assert the state secrets privilege. *First*, Mr. Montgomery does not, and indeed cannot, claim he acts on behalf of the government, let alone that he is the "head of the department" invoking the privilege. *See id.*; Bedell Decl. Ex. I, May 15 Letter. For that reason, alone, Mr. Montgomery's attempt to claim the state secrets privilege fails. *See Carroll*, 2011 WL 13299638 at *4.

*Second*, the government has not invoked the state secrets privilege on Mr. Montgomery's behalf despite having had the opportunity to do so. Mr.

Montgomery wrote to the U.S. Attorney General's office on March 27, 2023, providing the Subpoena and asking the government to weigh in on his concern that the state secrets privilege might bar disclosure. Bedell Decl. Ex. M, Mar. 27, 2023 Ltr. from C. Kachouroff to M. Garland.   On April 26, 2023, the government responded to Mr. Montgomery, stating that "the United States takes the same position it has taken in its publicly filed briefing in *Montgomery v. eTreppid Technologies, LLC, et al.*, Nos. 3:06-cv-56 & 3:06-cv-145 (D. Nev.), ECF No. 1243." Bedell Decl. Ex. G, April 26, 2023 Ltr. from A. Luger to P. McSweeney & C. Kachouroff.   That public filing is the government's response to Mr. Montgomery's motion seeking relief from a 15-year-old protective order that he believed prevented his compliance with a subpoena issued to him by Mr. Lindell, seeking his data related to the 2020 election.   *See* Bedell Decl. Ex. N, United States' Mem. In Opp. to Dennis Montgomery's Mot. Filed at ECF No. 1236, *Montgomery v. eTreppid Techs., LLC*, No. 3:06-cv-00056-MMD-CSD (D. Nev. December 5, 2022).   The government stated that "Montgomery has not explained what these farfetched allegations of surveillance have to the do with Lindell's contentions that votes in the 2020 election were manipulated by anyone, let alone the United States Government." *Id.* at 13.   And then the Court denied Mr. Montgomery's motion. Bedell Decl. Ex. H, May 15, 2023 Report and Recommendation in *eTreppid*, at 1.

The government took the same position in response to Mr. Montgomery's letter regarding the Subpoena. Bedell Decl. Ex. G, April 26, 2023 Ltr. from A. Luger to P. McSweeney & C. Kachouroff. In other words, the government had an opportunity to review the Subpoena and evaluate whether it implicated any "state secrets," but it declined to assert the state secret privilege. Indeed, the government determined that the protective order entered in *eTreppid* in 2007 has nothing to do with the Subpoena. *Id.* ("[T]he United States takes the same position it has taken in its publicly filed briefing in [*eTreppid*]."); Bedell Decl. Ex. N at 3 ("Put very simply, the Protective Order in his case has nothing to do with the defamation litigation against Lindell . . ."). Accordingly, Mr. Montgomery cannot properly assert the state secrets privilege.

### B. *Smartmatic has not requested any documents subject to the state secret privilege.*

Even if Mr. Montgomery had standing to assert the state secrets privilege (he does not), he would not be able to properly withhold any responsive documents in his possession, custody, or control, because: (i) substantially all of Smartmatic's requests seek only documents or information related to the Defendants and individuals who assisted Defendants with their defamation campaign; and (ii) the narrow timeframe that Smartmatic identified in its requests precludes the possibility that any responsive documents would contain state secrets.

*First,* Mr. Montgomery cannot properly claim the state secrets privilege because substantially all of Smartmatic's requests seek documents and information related to the Defendants and their defamatory broadcasts rather than any state secrets that Mr. Montgomery might possess. In the Minnesota Litigation, Smartmatic alleges that Mr. Lindell and MyPillow defamed it by publishing statements that Smartmatic rigged the 2020 election. In the Subpoena, Smartmatic seeks, among other information, documents relating to Mr. Montgomery's collaboration with Defendants and the sources they relied upon for their defamatory content. In fact, of the seventeen document requests in the Subpoena, twelve relate to Defendants on their face and do not seek any information that could reasonably be construed as "state secrets." *See* Bedell Decl. Ex. B, Subpoena, at Request Nos. 3, 5–8, 10–13, 15–17. For example, Request No. 5 seeks "[c]ommunications with LINDELL or MY PILLOW concerning SMARTMATIC, DOMINION, the 2020 PRESIDENTIAL ELECTION, the TRUMP ADMINISTRATION, and/or the TRUMP CAMPAIGN." *Id.* at Request No. 5. There is not a single communication between Mr. Montgomery and Mr. Lindell or any other My Pillow employee that could be a state secret.

Mr. Montgomery also cannot reasonably claim that the remaining five requests—Request Nos. 1, 2, 4, 9, and 14—seek state secrets. In those requests, Smartmatic seeks the following:

- "Documents and Communications with or concerning SMARTMATIC."

- "Documents and Communications with or concerning DOMINION."

- "Documents and Communications concerning coverage of the 2020 PRESIDENTIAL ELECTION by OTHER NEWS ORGANIZATIONS."

- "Documents relating to Your expertise with voting machines and/or election security."

- "Documents and Communications concerning Your efforts to assess, investigate, verify, or vet any aspect of Your statements regarding the 2020 PRESIDENTIAL ELECTION."

Bedell Decl. Ex. B, Subpoena.  These requests have nothing to do with any "state secrets" from 2007 that Mr. Montgomery might possess.

*Second*, even if any of Smartmatic's requests could reasonably be construed as seeking state secrets, the timeframe of them precludes the possibility that Mr. Montgomery would need to produce any state secrets in response to them.   As discussed above, Mr. Montgomery claims that he can invoke the state secrets privilege based on litigation and protective orders from 2006 and 2007.   Bedell Decl. Ex. M, March 27, 2023 Ltr. from C. Kachouroff to M. Garland.  But Smartmatic seeks only documents from January 1, 2020 to the present.   Bedell Decl. Exs. B, Subpoena, & F, Apr. 13, 2023 Ltr. from J. Bedell to C. Kachouroff. It does not seek any documents or information implicated by protective orders that predate the Obama administration.  *Id.*

### III.   MR. MONTGOMERY'S CLAIM THAT HE HAS NO RESPONSIVE DOCUMENTS LACKS ANY CREDIBILITY.

In response to ten of Smartmatic's requests, Mr. Montgomery claims he does not have any responsive documents. But documents produced in the Minnesota Litigation cast doubt on Mr. Montgomery's claim.

For example, in Request No. 5, Smartmatic seeks communications with Mr. Lindell or individuals from My Pillow concerning Smartmatic, Dominion, the 2020 U.S. election, the Trump Administration, and/or the Trump Campaign. Bedell Decl. Ex. B, Subpoena, at 10. In response, Mr. Montgomery claims that he does not possess a single responsive communication concerning Smartmatic, Dominion, or the 2020 U.S. election. Bedell Decl. Ex. C, Response. Yet, Mr. Lindell stated in his sworn testimony that in January and February 2021, he obtained information about Dennis Montgomery "through communications *directly* with [Mr. Montgomery]." Bedell Decl. Ex. Q, Declaration of Michael J. Lindell. Mr. Montgomery similarly claims he does not possess any communications with guests on Mr. Lindell's defamatory broadcasts, but on January 16, 2021, a producer of Lindell's defamatory content, Mary Fanning, copied Mr. Montgomery on an email to Mr. Lindell in which she mentioned that Mr. Montgomery possessed documents supporting the "Hammer" conspiracy theory regarding election fraud. Bedell Decl. Ex. O, Jan. 16, 2021 Email from M. Fanning to M. Lindell. Further, Mr. Montgomery claims he does not possess any documents showing any remuneration

he received in exchange for work conducted for Mr. Lindell, but a text-message exchange between Mr. Lindell and Ms. Fanning shows that Mr. Lindell "bought him a 2 million dollar house and another 1.1 million earlier in the year, and "[h]e signed everything over to me." Bedell Decl. Ex. P,  Aug. 12, 2021 Text Message from M. Lindell to M. Fanning.

Based on these documents, it is clear that documents responsive to Smartmatic's Subpoena exist and his claim that he does not possess a single responsive document lacks any credibility.  Mr. Montgomery should be ordered to conduct a proper search and produce all responsive documents.

## CONCLUSION

Dennis Montgomery fabricated the conspiracy theory that the 2020 election was rigged by actors using "the Hammer and Scorecard," and Mr. Lindell amplified Mr. Montgomery's lies in his own defamatory content about Smartmatic. As such, Mr. Montgomery was a key source of information for Mr. Lindell and is a key fact witness in Smartmatic's case against Defendants.    Accordingly, Smartmatic respectfully requests that the Court enter an order compelling Mr. Montgomery to produce documents responsive to the Subpoena and to sit for a deposition.

Respectfully submitted,

*/s/ Matthew Langley*
MATTHEW LANGLEY
MICHAEL E. BLOOM (*pro hac vice*
application forthcoming)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone:  312.212.4949
Facsimile:  312.767.9192
Email: mlangley@beneschlaw.com
        mbloom@beneschlaw.com

JAMES R. BEDELL (*pro hac vice*
application forthcoming)
**BENESCH, FRIEDLANDER,**
  **COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email: jbedell@beneschlaw.com

*Attorneys for Petitioners*

## LOCAL RULE 3.01(G) CERTIFICATION

I certify that Petitioners have conferred with Respondent regarding the dispute over Petitioners' subpoena. The parties do not agree that Respondent can comply with the subpoena without this Court's intervention. Respondent wrote to Petitioners on May 15, 2023 to state that Respondent will not comply with the subpoena without a court order.

/s/ Matthew Langley

Matthew Langley